IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MCCORMICK,[1]<br><br>　　　　　Petitioner,<br><br>　　　vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[2]<br><br>　　　　　Respondent. | No. 9:17-cv-00948-JKS<br><br>MEMORANDUM DECISION |

　　　　John McCormick, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, McCormick was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Greene Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 11-B-3514), indicates that McCormick was conditionally released to parole supervision on June

---

　　　[1]　　The Clerk of Court is respectfully directed to correct the case caption to reflect the spelling of Petitioner's name as written in the Petition: John McCormick. The Court notes, however, that Petitioner's name is listed as "McCormack" in the DOCCS registry (Inmate No. 11-B-3514), which was also the name used on direct appeal, *see People v. McCormack*, 53 N.Y.S.3d 859 (N.Y. App. Div. 2017). If McCormick were challenging his underlying conviction, the Court would use the name under which he was convicted, McCormack. Because the spelling of his name is listed as McCormick on a number of documents from the parole revocation proceeding he is challenging, the Court will use that spelling here.

　　　[2]　　Because McCormick has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted for Brandon J. Smith, Superintendent, Greene Correctional Facility. FED. R. CIV. P. 25(c).

28, 2018.  The record before this Court indicates that McCormick has not filed a change of address.  Respondent has answered the Petition, and McCormick has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 14, 2009, McCormick appeared with counsel to plead guilty to third-degree burglary in exchange for an agreed-upon sentence of 3½ to 7 years' imprisonment.  At the time, McCormick was on parole for an unrelated 16-to-48 month sentence imposed in 2003.  As part of the plea agreement, it was agreed that McCormick would be sentenced to probation if he successfully completed the state court's drug program, and McCormick executed a written drug court diversion contract that included those terms of the agreement.  After it was determined that McCormick had not successfully completed the program, the trial court imposed the agreed-upon imprisonment term.

McCormick appealed, arguing that the trial court erred by refusing to allow McCormick to withdraw his guilty plea and failing to assign substitute counsel based on an alleged conflict of interest.  The Appellate Division of the New York Supreme Court unanimously affirmed the judgment against McCormick in a reasoned opinion issued on June 9, 2017.  *People v. McCormack*, 53 N.Y.S.3d 859, 860 (N.Y. App. Div. 2017).  The New York Court of Appeals summarily denied McCormick's application for leave to appeal on November 21, 2017.  *People v. McCormack*, 93 N.E.3d 1217, 1217 (N.Y. 2017).

On December 16, 2015, McCormick was conditionally released to parole supervision. Shortly thereafter, McCormick violated the terms of his parole, and agreed to plead guilty to one count of violating his parole by threatening the safety of a parole officer, in exchange for dismissal of all other charges.  His parole was revoked on April 13, 2016, and McCormick

returned to state prison, where he was ordered to serve the remainder of his sentence. On May 1, 2016, McCormick informed DOCCS that he intended to pursue an administrative appeal of his parole revocation. DOCCS informed McCormick that he had until September 16, 2016, to perfect the administrative appeal. McCormick did not file a brief or seek an extension, and the administrative appeal was closed.

Instead, McCormick filed a *pro se* application for a writ of habeas corpus in the New York Supreme Court dated August 6, 2016, challenging the revocation of his parole for a variety of reasons. On April 3, 2017, the county court dismissed the application on the ground that McCormick failed to administratively appeal the revocation of his parole. McCormick appealed the dismissal to the Appellate Division. The Appellate Division had not determined McCormick's appeal when briefing in the instant case was completed, and it is not clear from the record whether McCormick's state habeas proceedings are still pending.

McCormick filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on August 21, 2017, the timeliness of which Respondent does not contest. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, McCormick argues that: 1) DOCCS officials improperly calculated his jail time credit; 2) those officials acted with "malice and prejudice" in improperly crediting a portion of his post-2009 jail time in satisfaction of his 2003 sentence rather than applying it entirely to his 2011 sentence; 3) he "has a right to know what records [DOCCS authorities] relied on" in calculating the portion of his 2011 sentence that has already

been served; and 4) he was not given adequate notice of the supplemental parole violation charges, and parole revocation counsel had an actual conflict of interest.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed

to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

A petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction.

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)).

Here, however, McCormick does not challenge the validity of his underlying conviction, and he does not assert a concrete and continuing injury or other collateral consequence of his conviction. Rather, he challenges DOCCS's calculation of his sentence and the propriety of his parole revocation proceedings. Where, as here, the petitioner does not challenge his underlying conviction, there is no presumption of collateral consequences. *See Spencer*, 523 U.S. at 7-8 (finding that once a sentence is complete, a habeas petitioner challenging a parole revocation must demonstrate collateral consequences to avoid dismissal on mootness grounds); *Butti v. Fischer*, 385 F. Supp. 2d 183, 185 (W.D.N.Y. 2005) ("[P]revailing case law holds that no such presumption applies in challenges to proceedings other than the underlying criminal convictions.").

As previously mentioned, a review of the DOCCS Inmate Information database shows that McCormick was conditionally released to parole supervision on June 28, 2018, and that the

maximum expiration date for his sentence was August 24, 2018.  *See* DOCCS Inmate Locator Website, *available at* http://nysdoccslookup.doccs.ny.gov/, Department ID Number 11-B-3514.  The DOCCS's website explains that, "[u]pon reaching the maximum expiration date, the individual's legal obligation to serve a custodial sentence or period of parole supervision ends." *See* DOCCS Inmate Information Data Definitions, *available at* https://publicapps.doccs.ny.gov/ILookup/fpmsdoc.html#me.  It therefore appears that McCormick is no longer in the custody of DOCCS because his legal obligation to serve his sentence and period of parole supervision has ended.

Accordingly, McCormick's Petition, consisting solely of claims challenging DOCCS's calculation of his sentence and its revocation of his parole, appears to be moot.  *See, e.g.*, *Robinson v. Connell*, No. 9:03-cv-1151, 2008 WL 907318, at *2 (N.D.N.Y. Mar. 31, 2008) (holding that a petitioner who had been released to parole "failed to demonstrate a continuing concrete injury as the result of the alleged miscalculation of his release dates that might have been remediable by writ") (collecting cases)); *see also Witzke v. Brewer*, 849 F.3d 338, 340 (6th Cir. 2017) (holding re-release on parole mooted challenge to parole revocation); *Scott v. Warden of Buena Vista Corr. Facility*, 453 F. App'x 837, 839 (10th Cir. 2012) (holding re-parole mooted challenge to extension of parole revocation).  Because McCormick challenges only the validity

of his incarceration, and the sole remedy he seeks[3]—earlier release—is no longer needed or available, his Petition must be dismissed as moot.[4]

## V. CONCLUSION

McCormick is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DISMISSED as moot**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

---

[3] To the extent McCormick's claim in Ground 3 for additional information relating to the records DOCCS relied on when calculating his sentence could be deemed a standalone request unchanged by his conditional release to parole supervision and completion of his period of parole supervision, McCormick fails to provide any legal support for his contention that he is entitled to such information.

[4] McCormick's claims do not have fallen within the "capable of repetition, yet evading review" exception to the mootness doctrine. The "capable of repetition yet evading review" exception applies "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *United States v. N.Y.C. Dist. Council of N.Y.C. & Vicinity of the United Bhd. of Carpenters*, 709 F. App'x 60, 63 (2d Cir. 2017) (citation omitted). Courts are hesitant to apply the exception where the action "capable of repetition," as here, requires future violations of the law. *See United States v. Corbin*, 620 F. Supp. 2d 400, 407 (E.D.N.Y. 2009); *Taylor v. Riverside Reg'l Jail Auth.*, No. 11-CV-456, 2011 WL 6024499, at *7 (E.D. Va. Dec. 2, 2011) ("Courts often find that no reasonable expectation exists when the plaintiff must engage in illegal behavior in order to be subjected to the challenged action again."); *see also Spencer*, 523 U.S. at 17-18 (holding that petitioner challenging his parole revocation failed to meet both requirements of the exception: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again" (citation and internal quotation marks omitted)). In any event, the DOCCS's record indicates that both McCormick's sentence and period of post-supervision release have been fulfilled, and thus his claims fall outside this exception.

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 22, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
